Good morning judges. Janice Deaton on behalf of Mr. Alarcon-Tapia. I will endeavor to spend about 8 minutes in my argument now and save 2 minutes for rebuttal. Alright, so this case arises out of a 1326 charge in which Mr. Alarcon-Tapia challenged his underlying deportation. There were 2 expedited removals from 2003 that resulted from an illegal deportation which occurred in 1998. In 1998, Mr. Alarcon-Tapia was deported based on a... Explain to me how the 1998 order taints the subsequent expedited removal orders. Yes, Judge Wynn. The 1998 deportation tainted the 2003 expedited removals because, but for that illegal deportation, he would not have been an inadmissible alien. The expedited removals only apply, those proceedings only apply to 2 types of aliens, that is people that are inadmissible at the time that they come into, or attempt to come into the United States. But isn't the correct proposition that it wouldn't have applied if he'd gotten some sort of relief from that, but he didn't, so he was under the order, he wasn't permitted to come back, he couldn't... That's true. He couldn't just take the law into his own hands, so to speak. But Judge Parker, the problem is that, but for that deportation, because of his due process violations, he would not have been, he was deported illegally, and so he really was not an inadmissible alien. He still should have retained his legal lawful permanent status. But from utilizing the normal court processes in order to challenge that allegedly invalid 1998 order, he could have filed a motion, for example, to reopen before the BIA. So what excuses him from doing that? He actually did appeal the order. His attorney, Armando Rios, did not, he rendered ineffective assistance of counsel because he did not even raise the fact that the possession of a dagger was not a deportable offense. No, I understand that. I think the point is that even if, assuming that an injustice occurred, you've got to utilize the normal court processes in order to challenge that, right? There's no fruit of the poisonous tree type of analysis that applies to this situation, is there? Well, that's exactly what I argue in my brief, is that it is, in fact, a fruit of the poisonous tree, because the government is relying. What occurred is this man, who was a lawful permanent resident, became an unlawful or an undocumented alien because of the illegal deportation, thereby subjecting him to an expedited removal procedure, which he would not have been subjected to but for the illegal deportation. Look, if I'm convicted of a crime but I'm actually innocent and I'm in jail, I can't defend against it and I walk out or escape. I can't defend against a jailbreak on the theory that my underlying conviction was invalid, can I? Well, the answer is no, I don't think you can. However, I don't think that that's the appropriate analogy here because the expedited removals only apply to a certain type of alien and Mr. Alarcon was not that type of alien because of the unlawful deportation. If the court does find, if this court does find that the expedited removals were not fruit of the poisonous tree, were not tainted by the illegal deportation, then the next step is to continue with the analysis in determining whether the expedited removals were fundamentally unfair and deprived Mr. Alarcon of due process, and if so, whether he was prejudiced. And so the answer to both of those questions is yes as well. This court has rendered a recent decision, Raya Vaca, in which the defendant there, Mr. Raya Vaca, was removed, his due process rights were violated, he submitted a declaration very similar to the one submitted by Mr. Alarcon Tapia alleging that he was not informed of the relief that he could have plausibly gotten and that therefore he was prejudiced. In this case, Mr. Alarcon Tapia filed a declaration alleging that he was removed expeditiously two times in 2003 and that in neither instance was he informed of his grounds for relief or his right to relief and the right to relief being the withdrawal of his application for admission, which would have avoided a formal deportation order. And in his declaration, he actually states that had he been so informed, he would have requested that relief. In Raya Vaca, this court looked at some of the statistics that that defendant filed. He was, I believe, removed in 2011 and the statistics there applied up until 2008. In Mr. Alarcon's case, I actually submitted statistics from 2003, which is the year that he was removed, which indicates that 70% of those requesting relief got it. Furthermore, and I think importantly, as is mentioned in Vallardo, which I also submitted belatedly yesterday, and Raya Vaca, Mr. Alarcon was married to a United States citizen. He had two United States citizen children. He had joined a labor union. He was working. He owned a home. He had many, many, many equities, which weigh heavily in his favor, and we did submit two exhibits of similarly situated aliens who did in fact receive relief. The government relied on the fact that he was subsequently convicted of a penal code section 496, I think it was, for which he served two years in the state prison. How do you respond to the government's argument? Well, first of all, we would place Mr. Alarcon back to his status at the time of the 1998 deportation and the 2003 expedited removals. Again, it's speculation whether any of the subsequent offenses would have impacted Mr. Alarcon, but I believe that the law, in fact, the law does state that you place, just as when we open a motion to, when we file a motion to reopen, we place the person back at the status of, at the time of the motion that he's trying to reopen. That was very poorly stated. I'll say it again. I believe that Mr. Alarcon's status at the time of these entries is what we should look at, at the time of his 1998 deportation, but for that, and in 2003, I do understand that he did have several encounters with the law. He has, I think he had one felony, but I believe that that was post-2003 and prior to the case, to the 1326 case. Again, I think that we would place him back at the time of the two attempted entries into the United States when he was removed in violation of his due process rights. You want to save the rest of your time? I would. Thank you. Good morning, Your Honors, and may it please the Court, Benjamin Katz on behalf of the United States. The fundamental disagreement in this case is the phrase resulted from. The government disagrees, as the court below did, that the 2003 expedited removals resulted from the 1998 removal. The 1998 removal is a red herring. It was a red herring below. The government did not rely on it in the operative indictment. It relied only on the 2003 removals. Those 2003 removals are factually and legally distinct from the 1998 removal. As was just discussed, the defendant, when he walked up in 2003, in fact did have an aggravated felony conviction. That 496 conviction was in 2000, intervening between the 1998 removal and the 2003 removals, the operative removals, the removals that matter to this case now. That 2000 conviction for an aggravated felony means that the defendant's deportability was, as this Court has said, a foregone conclusion. He was a deportable alien, so it is trying to draw an incorrect line in the alternate universe. This idea that he'd been wrongfully deported in 1998, and so he would have been an admissible alien in 2003, ignores the fact that he would not have been. If we go on that timeline, in 2000, he's deportable. Turning to the issues of the 2003 expedited removals, as we go through the prejudice analysis, nearly every factor, or every factor, cuts against the idea that he was prejudiced and that he would have been offered withdrawal of relief. Those statistics do not necessarily apply to someone like the appellant, who, as we go through them, we know, as an initial matter, as was noted in Riavaca, fraud is the first step. He twice, within a week, made a fraudulent claim to U.S. citizenship. That speaks also to the first factor from the field manual, the seriousness of the violation. We have prior findings of inadmissibility. I'll concede that with the first attempt, that prior finding was the 1998 removal, which we just discussed. But for the second expedited removal, the prior finding was just a week earlier, was the first fraudulent attempt that he made to enter. Now, I appreciate the fact that the subsequent removal orders are legally distinct proceedings, but as I understand it, his argument is more of a general fairness and equity type of argument. It's like the government made a mistake, and that mistake put him between a rock and a hard place that then led to his conduct. That general type of argument, I think, is what the defense is trying to assert, kind of a fruit of a poisonous tree type of argument. I understand, Your Honor, and that's an argument that's been rejected by this court on multiple occasions. A distinct proceeding is not looked at like a reinstatement. If we were talking about a reinstatement here, of course the government would have a problem. That's not this case. This case is like the three cases that are cited in our brief and additional cases that I haven't cited and I'm happy to if the court would like, that they're not looked back on in that way. This fruit of the poisonous tree argument has been rejected by this court. Furthermore, we need to talk about the self-help issue, something that Judge Parker raised with my opponent. The fruit of the poisonous tree argument is undermined by the fact that we may have a different case if he had walked up and said, I have an LPR, I have an LPR card, I was wrongfully excluded, steps up and says that. He didn't do that. Twice within a week in 2003, he walked up and made a fraudulent claim to citizenship. That, I believe, seriously undermines this fruit of the poisonous tree argument, that he did not go through the appropriate channels and the expedited removals were proper both factually and legally. And unless the court has any further questions, I'll submit on that. Thank you. Thank you very much. Thank you. First of all, I'd like to comment briefly on the cases cited by the government in their brief. In Garcia Arredondo and Davalos, neither of those cases stand for the proposition for which the government stated. Both of those cases stated that the indictments were based on solely certain deportations, and they were not reinstatements of prior invalid deportations. And so I just want to distinguish those. What we're talking about here is distinguished from Bajardo because the district court, and I think this is important, what Mr. Alarcon wants is due process. So whether he's an aggravated felon, that was never adjudicated. He doesn't want due process. He wants to come back into the country. Well, but in Bajardo, and I think this is important, Judge Parker, Bajardo never had legal status, never had legal status. So expedited removal proceedings applied appropriately to him. With Mr. Alarcon, he did have legal status that was wrongfully stripped from him, which then made him subject to expedited removal. Had he had a regular deportation, pardon me, a full deportation proceeding, the aggravated felony, if in fact that was adjudicated, which we don't even know by the immigration judge, that might have been waived. We don't know. He had many equitable factors in his favor. And so I take issue with the reliance on Bajardo. It's distinguishable. Mr. Bajardo never was a legal permanent resident. Mr. Alarcon was, and that's critical. Explain to me how the subsequent conviction is not going to make all of this discussion academic. Because even with the subsequent conviction, Judge Parker, people are still eligible and entitled to a hearing in front of an immigration judge. There are many felonies, and I'm not an immigration attorney, and so I can't answer the court regarding whether Mr. Alarcon would definitely get a waiver. You're doing a pretty good job. But it would be an issue. And so at this point, based on this record, we don't know what the immigration judge would have done with Mr. Alarcon, given his family status, given his work history, given all of the other factors in his favor. All right. Thank you very much. We appreciate the arguments from both sides.
judges: Pregerson, Parker, Nguyen